**UNITED STATES of America, Plaintiff–Appellee,**

v.

**E. LaVay McKINLEY, Defendant– Appellant.**

**No. 93–8132.**

United States Court of Appeals, Tenth Circuit.

June 27, 1995.

---

David A. Kubichek, Asst. U.S. Atty. (David D. Freudenthal, U.S. Atty., and Patrick J. Crank, Asst. U.S. Atty., with him on the brief), Office of the U.S. Atty., Casper, WY, for plaintiff-appellee.

Clifford J. Barnard, Boulder, CO, for defendant-appellant.

\* Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

1. Although Mr. McKinley raises a number of other evidentiary and sentencing issues on appeal, we need not reach them given this court's disposition on the Sixth Amendment issue.

Before HENRY, Circuit Judge, McKAY, Senior Circuit Judge, and KANE,\* Senior District Judge.

HENRY, Circuit Judge.

E. LaVay McKinley appeals his convictions in federal court of mail fraud under 18 U.S.C. § 1341; wire fraud under 18 U.S.C. § 1343; money laundering under 18 U.S.C. § 1956(a)(1)(A)(i); and conspiracy to commit mail fraud, wire fraud, and money laundering under 18 U.S.C. § 371. Mr. McKinley contends that his convictions must be reversed because the district court denied his motion to represent himself in contravention of the rule announced by the Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We agree that Mr. McKinley was denied his Sixth Amendment right to self-representation, and therefore reverse and remand the case for a new trial.[1]

## BACKGROUND

On December 4, 1992, a nine-count indictment was filed in the district court naming Mr. McKinley as a defendant.[2] On December 9, 1992, Mr. McKinley filed a pro se motion to refuse court-appointed counsel, Mr. Pretty, and to retain counsel of his choice. Mr. McKinley's "counsel of choice" was a Mr. Thomas M. Dalby, "Constitutional Counsel and Agent," who was not an attorney. Mr. McKinley supplemented this motion with a notarized document purporting to grant a power of attorney to Mr. Dalby and a pro se brief in support of the motion, in which he argued that the right to counsel encompasses the right to be represented by someone other than a "so-called 'licensed attorney.'" *See* Rec. vol. I, doc. 30. Mr. McKinley's arraignment was held the same day. The district judge raised the issue of representation by Mr. Dalby and made clear that he would not allow Mr. McKinley to be represented by lay counsel. Mr. McKinley was less than cooperative at that hearing.[3]

2. Count nine, criminal forfeiture under 18 U.S.C. § 982(a)(1) was subsequently dismissed at the government's request.

3. The following exchange took place:
 [THE COURT]: Now, there was a fellow that called our Clerk's Office last night from Florida, and we quickly checked with the Florida

On January 6, 1993, Mr. McKinley filed a "Demand" for information, purporting to proceed "Propia [sic] Persona." In the demand, Mr. McKinley made several inquiries of the court, including whether the charges against him were civil or criminal in nature and, if criminal in nature, whether the court proceeded under "Common Law Jurisdiction" or under "the criminal aspects of Admiralty Jurisdiction." *See* Rec. vol. I, doc. 68. Also on that date, Mr. McKinley filed a "Demand for Assitance [sic] of Competent Counsel" of his choice and a "Notice of Rescindtion [sic] of All Signatures Including But Not Limited to the Request for Court Appointed Counsel." Rec. vol. I, docs. 69–70. On January 11, 1993, Mr. McKinley's court-appointed counsel, Mr. Pretty, filed a motion to withdraw due to his belief that Mr. McKinley's family had hired a private attorney for his defense. Rec. vol. I, doc. 73.

The district court held a hearing on January 24, 1993 to dispose of these motions. Mr. Pretty's motion to withdraw was denied by the district court because the private attorney apparently never entered an appear-

State Bar Association and learned that there is nobody listed by that name as an attorney. Now, you're not going to have him.

Do you see that bar? Do you see those gates back there? That's the bar of the court. Nobody that is not a lawyer gets through that bar. And I've got a couple of great big marshals to make sure that they don't.

That fellow can be here, he can sit in the front row, he can sit in the back row. He can sit anyplace in the courtroom except within the bar, and we're not—you can talk to him at recesses or anything like that, but we're not going to have a charade by some guy that isn't a member of the bar.

Now is that clear? If it isn't, I'll say it again, you're not going to have this guy from Florida as your attorney. You're going to have an attorney. I've appointed Mr. Pretty. Mr. Pretty stands appointed until you get somebody at your own cost that enters an appearance. By that he signs his name and files an appearance. When you get somebody like that, I'll dismiss Mr. Pretty and you can have your lawyer. Do we understand each other?

THE DEFENDANT: (No response.)

THE COURT: I'm not going to say it again. We're going to go forward. Did you understand your rights?

THE DEFENDANT: Could you read this?

MR. PRETTY: Your honor, for the record my client would like me to read something that says attention United States District Court which I have filed with the Court.

THE COURT: I didn't ask you that question. I asked you, Mr. McKinley, did you understand your rights? Answer yes or no.

THE DEFENDANT: No.

THE COURT: You don't understand. What is there that you didn't understand about them?

THE DEFENDANT: I understand under the Constitution I have a right to counsel and that doesn't necessarily mean an attorney.

THE COURT: I pointed out that you have a right to counsel, and it does mean that you have an attorney, and if you don't like that, you can appeal me to the Court of Appeals. But that's the rules by which we play. I make the rules. Do you understand that?

THE DEFENDANT: Then I would say that we—

THE COURT: Now, let me say one more thing.

THE DEFENDANT: —we will appeal that.

THE COURT: Let me say one more thing. You're verging on the borderline of getting sassy with the Court, and I don't take that either. If you do that, do anything like that, I'm going to make a mark and that will be the first mark and that will be worth 30 days for contempt of court at the end of your trial after you're sentenced on these pending charges. If you do it again, I'm going to make a second mark and that's going to be worth 60 days, and if you do it a third time, it's going to be another mark and that will be 90 days, and it will increase until you learn your lesson.

Now, you and I are going to understand each other, and I'm going to tell you now, I'm not going to take anything from you. You got the message?

THE DEFENDANT: Yes, sir.

THE COURT: Either you do or you don't.

THE DEFENDANT: Yes, sir.

THE COURT: All right. Did you understand the basic rights that I told you about?

THE DEFENDANT: No, I didn't.

THE COURT: Well, that's a darn lie because it was pretty apparent, and in 17 years on this bench, that's the first time somebody has said no.

Let me point this out to you: You have a right to a jury trial at which you're presumed to be innocent, a right to confront the witnesses against you and to have your own witnesses produced in court and to have the jury decide your guilt or innocence. If you plead guilty to these charges, you'll waive these rights. But if you plead not guilty to these charges, you avail yourself of them. Do you understand that point?

THE DEFENDANT: Yes.

THE COURT: Very well. Is there any reason, Mr. Pretty, why we should not go forward?

MR. PRETTY: No, Your Honor.

Rec. supp. vol. I, at 10–13.

ance in the case. *See* Rec. vol. XLVII, at 13–14. During the hearing, the court gave Mr. McKinley the opportunity to orally argue his pro se motions, and the following exchange took place:

> DEFENDANT McKINLEY: Okay. Thank you. Your Honor, I am here under a special appearance, and let the record show that the accused is standing sui jurist [sic], and being denied his Sixth Amendment rights—
>
> THE COURT: You are not sui jurist.
>
> DEFENDANT McKINLEY: —and defending himself.
>
> THE COURT: You are represented here by an attorney, you are not representing yourself.
>
> DEFENDANT McKINLEY: I demand that right to represent myself.
>
> THE COURT: Well, I am going to have Mr. Pretty continue to represent you, because I think that a man trying to represent himself is a lot like a man trying to take out his own appendix on the kitchen table, and I don't think you are competent to represent yourself, Mr. McKinley.

Rec. vol. XLVII, at 42–43.

On February 10, 1993, Mr. Pretty filed a "Motion to Have Defendant Represent Self." Through this motion Mr. McKinley argued that in light of the Supreme Court's decision in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), he was entitled to proceed pro se. He also requested that, pursuant to *Faretta,* the court hold a hearing with regard to the issue of self-representation.

On February 19, 1993, the district court entered an Order Denying Defendant's Motion to Represent Himself. The court's Order stated: "For several reasons, this Court is persuaded that defendant McKinley re-

mains unaware of the dangers and disadvantages of self-representation." Rec. vol. II, doc. 115, at 2. The court first cited Mr. McKinley's "*pro se*-styled motions," *id.* at 3, stating that one "exhibited a fundamental misunderstanding of criminal jurisdiction and spent precious judicial resources on a patently frivolous inquiry." *Id.* at 2.[4] The court concluded:

> The Court further observes that defendant McKinley's desire to proceed *pro se* is motivated as much by his desire to delay and disrupt the proceedings against him as it is his desire to properly defend himself. McKinley's *pro se* -styled motions thus far exhibit little understanding of the criminal law and severely prejudice the case against him. The Court must conclude that defendant McKinley's self-representation "will cause procedural confusion without advancing any significant strategic interest of the defendant." [*Faretta,*] 422 U.S. at 805 [95 S.Ct. at 2486] (Blackmun, J., dissenting).
>
> The case at bar is an exceptionally complicated one. The government has accused McKinley of conspiring with other defendants in mail fraud, wire fraud, and money laundering. Many of the witnesses and much of the evidence must be obtained from outside this country. The complicated nature of the case combined with defendant McKinley's performances at the various pretrial hearings strongly suggest that the accused has little understanding of criminal law and therefore cannot competently represent himself.

*Id.* at 3.

The case proceeded to trial on June 30, 1993 in front of a different district judge. Mr. McKinley was represented by Mr. Pret-

---

**4.** The court also stated that Mr. McKinley filed a pro se motion to substitute new counsel, but subsequently opted to retain Mr. Pretty without informing Mr. Pretty of his decision. The court stated that this had caused Mr. Pretty to be unprepared to argue a motion to dismiss and caused other confusion in the case.

To the extent the district court relied on this finding to support its denial of Mr. McKinley's right to self-representation, we hold it to be

clearly erroneous. It is clear from the record that *Mr. Pretty* filed the motion at issue, not Mr. McKinley. Mr. McKinley's attempts to proceed pro se were therefore irrelevant to any procedural delay or confusion arising out of the filing of this motion. Additionally, the record does not reflect a decision by Mr. McKinley to retain Mr. Pretty. To the contrary, Mr. McKinley continually refused representation by Mr. Pretty, well beyond the date that the district court denied his motion to represent himself. *See infra* note 5.

ty.[5] The jury returned a verdict finding Mr. McKinley guilty on all eight counts, and the district court sentenced him to 342 months imprisonment, $5,475,668.52 in restitution, and $400.00 in special assessments.

## DISCUSSION

A criminal defendant is both constitutionally and statutorily entitled to waive his Sixth Amendment right to counsel and proceed pro se in a federal criminal trial. *See Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541–42; 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."). When a court improperly denies the right to self-representation, that denial is not subject to harmless-error analysis. *Peters v. Gunn*, 33 F.3d 1190, 1193 (9th Cir.1994) (citing *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984)). In order to invoke the right, however, the defendant must "clearly and unequivocally" assert his intention to represent himself, *United States v. Reddeck*, 22 F.3d 1504, 1510 (10th Cir. 1994), and this assertion must be timely, *see United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir.) (holding that the third day of trial was too late to invoke the right to self-representation), *cert. denied*, 493 U.S. 981, 110 S.Ct. 514, 107 L.Ed.2d 515 (1989).

The government first argues that Mr. McKinley never unequivocally asserted his right to represent himself. Specifically, the government argues that

> the closest the Defendant came to an unequivocal demand to proceed *pro se* was the written motion filed on his behalf by his appointed counsel. But even that request was not unequivocal, because it sought the right for the Defendant to participate only as *lead counsel*, and it likewise requested the court to appoint counsel to *assist* him in his defense.

Brief of Appellee at 27–28. While it is certainly true that there is no constitutional right to a hybrid form of representation, *see United States v. Bennett*, 539 F.2d 45, 49 (10th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), we do not agree with the government that this motion could be construed as a request for anything other than self-representation. First, the motion was entitled, "Motion to Have Defendant Represent Self." Rec. vol. II, doc. 113. The motion went on to assert that Mr. McKinley "fe[lt] that he [wa]s competent to represent himself" and that he "ha[d] the right to defend himself" under the Sixth Amendment and *Faretta*. Once in this motion Mr. McKinley stated that he had "the right to be lead counsel." Later in the motion he stated that if the district court determined at a hearing that he could represent himself, the court should also decide "whether or not he should have Court appointed counsel to assist him in his defense."[6] We do not construe either of these statements to infer that Mr. McKinley was really asking for some form of hybrid representation. We note that the district court also made no mistake as to the form of relief sought in the motion. *See* Order Denying Defendant's Motion to Represent Himself, Rec. vol. II, doc. 115. The government does not cite, nor do we find, any evidence in the record that Mr. McKinley later withdrew or undermined this request so as to make it equivocal. Further, this request for self-representation was made four and one-half months before trial. We therefore hold that the motion served to

---

5. Mr. McKinley continued to file various pro se motions and refused to cooperate with Mr. Pretty for some time after the denial of his motion to represent himself. *See* Rec. vol. II, doc. 116 ("Notice of Document for 'Revocation of Signature and Grant of Power of Attorney and Consent' and Demand of Document Return" filed pro se); Rec. vol. II, doc. 117 ("Demand that the Court Refuse Ronald G. Pretty Requests for Funding for Trip to England" filed pro se); Rec. vol. II, doc. 118 ("Notice of Seizure of Evidence" filed pro se and alleging that Mr. McKinley was

"personally handling the accusations" against him); Rec. vol. II, doc. 121 ("Motion to Require Access to Client" filed by Mr. Pretty because Mr. McKinley had refused to meet with him).

6. "[O]nce a defendant has declared his desire to proceed pro se, appointment of standby counsel is a preferred, though not mandatory, practice." *United States v. Padilla*, 819 F.2d 952, 959 (10th Cir.1987).

unequivocally and timely invoke Mr. McKinley's right to self-representation.

■ Even if a defendant properly invokes the right to self-representation, however, there must still be a showing that he "knowingly and intelligently" relinquishes the benefits of representation by counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541–42. "Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry ... on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se.*" *United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied,* 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992).

The Supreme Court has recently reiterated that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." *Godinez v. Moran,* —— U.S. ——, ——, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993). Explaining the *Faretta* holding, the Court continued:

[In *Faretta*] we made it clear that the defendant's "technical legal knowledge" is "not relevant" to the determination whether he is competent to waive his right to counsel, and we emphasized that although the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored." Thus, while "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation.

*Id.* (quoting *Faretta,* 422 U.S. at 836, 834, 95 S.Ct. at 2541–42, 2540) (alteration in original) (citations omitted).

The district court in the instant case never held a hearing to determine Mr. McKinley's competency to waive his right to counsel. We must therefore examine the district court's reasons for denying self-representation, in light of the evidence in the record before it, to determine whether Mr. McKinley's Sixth Amendment rights were violated.

■ It is clear from *Godinez* that the district court erred to the extent that it relied upon Mr. McKinley's purported inability to competently *represent himself. See also Peters,* 33 F.3d at 1192 ("The 'competent' language in *Faretta* is directed at the 'knowing and voluntary' nature of the defendant's choice, not at the ability of the defendant to mount a successful defense."); *Orazio v. Dugger,* 876 F.2d 1508, 1512 (11th Cir.1989) ("A defendant need not be technically competent in the law to act in his or her own defense but *must be competent to make the choice* to proceed pro se."); *United States v. Flewitt,* 874 F.2d 669, 675 (9th Cir.1989) ("[T]he Sixth Amendment does not permit denying a defendant the right to self-representation on the basis that the defendant cannot represent himself with the degree of competence a lawyer might have."); *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir. 1986) ("[The district court] denied th[e] request [to proceed pro se] on the ground that Johnstone lacked the 'requisite education, background or training or experience.' *Faretta* imposes no such qualifications on the right to defend *pro se.*") (citation omitted), *recall of mandate denied,* 812 F.2d 821 (2d Cir.) (per curiam), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *Bennett,* 539 F.2d at 51 ("[A] court determination that an accused lacks expertise or professional capabilities cannot justify denying the right of self-representation. The only relevant determination is whether the accused makes an understanding waiver of his right to counsel.") (citations omitted).

■ However, the government argues that the district court cited two proper grounds for denying Mr. McKinley's motion to represent himself. First, the district court found that Mr. McKinley "remain[ed] unaware of the dangers and disadvantages of self-representation." Rec. vol. II, doc. 115, at 2. As support for this finding, the district court relied on Mr. McKinley's lack of legal expertise in his prior appearances before the court. As we have already stated, Mr. McKinley's legal prowess is not relevant to whether he should be allowed to represent himself. Nor do we believe that a defen-

dant's waiver of counsel is not knowing and intelligent merely because he attempts self-representation in the face of what most would consider unquestionably inferior skills. Rather, the district court's role is to ensure that the defendant understands that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. The record must therefore "establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

The district court in this case never held a hearing to determine whether Mr. McKinley's attempted waiver of counsel was knowing and intelligent. Additionally, the district court did not cite, nor have we been able to discover, any evidence in the record before it that indicated Mr. McKinley was not competent *to waive his right to counsel.* Consequently, the district court's finding that Mr. McKinley was incompetent to waive his right to counsel because he "remain[ed] unaware of the dangers and disadvantages of self-representation" is clearly erroneous.

The government also argues that because the district court found that "McKinley's desire to proceed *pro se* is motivated as much by his desire to delay and disrupt the proceedings against him as it is his desire to properly defend himself," Rec. vol. II, doc. 115, at 3, the district court's decision may be affirmed in light of the Supreme Court's holding in *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In *McKaskle*, the Supreme Court stated: "[A]n accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel *and that he is able and willing to abide by rules of procedure and courtroom protocol.*" *McKaskle*, 465 U.S. at 173, 104 S.Ct. at 948 (emphasis added); *see also Faretta*, 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541 n. 46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."). We note that the district court in this case did not cite *McKaskle* as a basis for its decision. Additionally, the district court again relied upon Mr. McKinley's purported inability to competently conduct his own defense to support the conclusion that he intended to disrupt and delay the proceedings. However, a defendant's mere incompetency in self-representation is not a sufficient basis for inferring a desire to delay and disrupt the proceedings. *See Flewitt*, 874 F.2d at 675 ("The government seems to contend that the appellants were disruptive because of their continual motions ... and their failure to utilize the discovery materials.... This is not the kind of disruption meant by the Supreme Court.... [T]he Sixth Amendment does not permit denying a defendant the right to self-representation on the basis that the defendant cannot represent himself with the degree of competence a lawyer might have.").[7] Because the district court cites no other basis for its conclusion that Mr. McKinley intended to delay and disrupt the proceedings, this finding is clearly erroneous.[8]

Mr. McKinley unequivocally and timely asserted that he wanted to represent himself. There is no suggestion in the record that his intended waiver of counsel was not knowing and intelligent. Nor is there sufficient evidence in the record that Mr.

---

7. We also do not believe that Mr. McKinley's behavior at his arraignment rose to such a level that the district court could reasonably have believed Mr. McKinley's desire to proceed pro se—asserted two months after his arraignment and four months before his trial—was motivated by a desire to delay and disrupt the proceedings.

8. The government has filed a motion to supplement the record in this case. In the motion, the government asks this court to consider the record in a civil proceeding in which Mr. McKinley sought to impose liens against the property of the presiding district judge and one of the Assistant United States Attorneys who worked on the prosecution of this criminal proceeding. The liens were apparently in contemplation of a future civil rights action. *See United States v. McKinley*, 53 F.3d 1170 (10th Cir.1995). We note, however, that these liens were filed *after* the district court denied Mr. McKinley's request to represent himself, and therefore the record in that case is not relevant to this court's analysis. The government's motion is therefore denied.

McKinley intended to disrupt or delay the proceedings. As we previously noted, *see* note 8, the evidence relied on by the government is not relevant to the extent that Mr. McKinley's behavior occurred *after* the district court's denial of his motion.

 We are not unmindful of the difficulties district courts face in dealing with pro se litigants. *See, e.g., Padilla,* 819 F.2d at 959.[9] However, we believe that *Faretta* and its progeny compel us to reverse Mr. McKinley's conviction and remand the case for a new trial free from constitutional error. This means that Mr. McKinley must be allowed to exercise *all* of his constitutional rights, "including the right to have assistance of counsel and the right to represent himself." *Johnstone v. Kelly,* 812 F.2d 821, 822 (2d Cir.), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). Mr. McKinley should note, however, that if he chooses to exercise his right to self-representation in his new trial, the district court

> may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.
>
> The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.

*Faretta,* 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541 n. 46 (citation omitted).

REVERSED and REMANDED.

9. In *Padilla,* this court recognized the potential benefits of appointing standby counsel in such cases. We stated that "appointment of standby counsel is a preferred, though not mandatory, practice." *Padilla,* 819 F.2d at 959.