FILED
United States Court of Appeals
Tenth Circuit

May 27, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAIME MANUAL PENA, a/k/a
Sleepy, a/k/a M.,

Defendant-Appellant.

No. 07-8009
(D. Wyoming)
(D.C. No. 2:06-CR-00157-CAB)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, and **HOLLOWAY** and **GORSUCH**, Circuit
Judges.

During the first day of jury selection in his methamphetamine conspiracy

trial, the defendant Jaime Manuel Pena created a disruption: he announced that he

was not happy with the services of his retained counsel Steven J. Rozan. After

Mr. Pena refused to comply with instructions that he should be quiet and that it

was too late in the day to obtain new counsel, the judge removed Mr. Pena from

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the courtroom and arranged for video and audio monitoring of the trial in Mr. Pena's holding cell.

On the afternoon of the second day of trial, Mr. Pena informed the judge that he was ready to comply with the directive not to disrupt the court proceedings and that he would no longer complain about Mr. Rozan's representation. The judge allowed Mr. Pena to return the courtroom, the trial continued, and the jury convicted him. The judge sentenced Mr. Pena to 325 months' imprisonment.

In this appeal, Mr. Pena argues that the district court (1) violated his Sixth Amendment right to self-representation; (2) erred in denying his motion for a mistrial; and (3) violated his Sixth Amendment right to be represented by the counsel of his choice. We are not persuaded by these arguments and therefore affirm Mr. Pena's conviction and sentence.

## II. BACKGROUND

In July 2006, a federal grand jury indicted Mr. Pena on one count of conspiracy to possess with intent to distribute and conspiracy to distribute more than 500 grams of methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. During the initial phases of the case, Mr. Pena was represented by appointed counsel Ronald G. Pretty. However, after three weeks, Mr. Pena sought to substitute retained counsel Steven J. Rozan. The district court granted his request.

During an in-chambers conference on the day that jury selection began, Mr. Rozan informed the judge that "there is some ground movement and rumblings that I'm hearing that I wanted to share with the Court that Mr. Pena may want to ask the Court to allow him to have Mr. Pretty resubstituted in and I would expect that he may want to put that on the record." Rec. vol. VI, at 7. The judge responded that Mr. Pena would be able to put such a request on the record but that he had no intention of granting the request.

Then, in open court, Mr. Pena asked the judge if he could have a word with him. The judge told Mr. Pena that there was no need for him to speak and that he should be seated. As the judge proceeded to ask questions to the prospective jurors, Mr. Pena again said that he had something to say. The judge answered: "[Y]ou're not going to say a word." Id. at 18. Mr. Pena replied, "I have to because someone has to speak up for my rights because my lawyer is not. . . . He is not working for me." Id. After the judge told Mr. Pena to be quiet, Mr. Pena stated, "I cannot stand no longer and go for this. You guys are going to have to remove me, then. . . . I apologize for this." Id.

The judge removed the prospective jurors from the courtroom and began an extensive discussion with Mr. Pena, his attorney, and the prosecutor. In summary, Mr. Pena stated that he had informed Mr. Rozan a couple of weeks earlier that he no longer wanted Mr. Rozan to be his attorney. Mr. Pena said that

he was afraid of Mr. Rozan and that "I will not go with this attorney. You guys are going to have to arrest me." Id. at 22.

At that point, the following discussion occurred:

| | |
|---|---|
| The Court: | Sit down and shut up. |
| The Defendant: | I will not sit down and I will not shut up, bring the jury in and waste your time anymore. I apologize, but I have to stand by this. This is my life on the line. |
| The Court: | Mr. Pena, I'm not going to have a disorderly trial. |
| The Defendant: | Then you need to remove me. |
| The Court: | I am not going to remove you. I don't want to. You have the right to be here - - |
| The Defendant: | I will not - - |
| The Court: | –but you must keep quiet. |
| The Defendant: | I am not going to be quiet, Your Honor. |
| The Court: | You are, too, going to be quiet. |
| The Defendant: | I apologize, but I will not. I will speak my case. I will speak what is going on here. It is my right to speak, ain't it? |
| The Court: | If you insist– |
| The Defendant: | <u>Then I want--can I represent myself?</u> |
| The Court: | If you insist on keeping talking and interrupting, what we're going to have to do is we're going to have to put you in a holding |

|  |  |
|---|---|
|  | cell[,] which is on this floor a couple of walls away. |
| The Defendant: | I've been in the holding cell. I know where it's at. |
| The Court: | And we will have an electronic connection to that cell and a loudspeaker so that you can hear it. |
| The Defendant: | That's what you guys have to do. |
| The Court: | But you're not going to be in here disrupting this court. |

Id. at 22-23 (emphasis added).

Mr. Pena then reported that Mr. Rozan had falsely stated that Mr. Pena was going to sign a plea agreement. Id. at 24. Mr. Pena handed the judge a letter outlining his complaints.

The judge proceeded to ask Mr. Rozan for his response. Mr. Rozan explained that he had negotiated a plea agreement that was in Mr. Pena's best interests and that, in Mr. Rozan's view, a trial would be "a dangerous thing" for his client. Id. at 28. However, Mr. Rozan continued, after his most recent personal visit with Mr. Pena, Mr. Pena had said, "Get me a better plea agreement." Id. at 29. In Mr. Rozan's opinion, "Mr. Pena is simply having an extremely emotional difficult time coming to terms with the realities of what he's involved with here, that he's playing with fire if he goes to trial, and that he would fare much better, greatly better, if he would take the plea agreement that

-5-

was on the table that is no longer in existence. I think this is just another ploy to get a continuance with another attorney." Id. at 29-30.

The judge then gave Mr. Pena an opportunity to respond. He explained: "And it is not that I want to go back to Mr. Pretty. You could send me to whoever you want to send me to. It is just I know for sure that this is not the kind of person that I want to be represented by right here in any kind of way. And that's just pretty much all I can say about those things." Id. at 36.

After hearing that response, the court ruled as follows:

> Well, I'm going to rule that your request for a different attorney is made too late, in the first place; in the second place, that there are no grounds for a change of attorney. Mr. Rozan is a good attorney who . . . is competent and his is prepared to defend you today and for the rest of the week, and I see no grounds for giving you another attorney.

Id. at 38.

In response, Mr. Pena announced that he was unwilling to comply with the court's ruling (i.e., by cooperating with Mr. Rozan's representation).

The Defendant:   After all of this how can I rely on him.

The Court:   You're going to have to.

The Defendant:   No, I will not. You're going to put me in the cell. I'm not going to stand right here while this goes on in front of me.

Id. at 38.

The judge then directed the marshals to transport Mr. Pena to a holding cell. Mr. Rozan moved for recusal of the jury panel that had heard Mr. Pena's initial outburst, but the judge denied the motion.

Upon calling the jury panel back to the courtroom, the judge explained that Mr. Pena had been disruptive and that he had said that he would continue to interrupt the proceedings. "[O]n that account," the judge said, "I have had to remove Mr. Pena from the courtroom, and he is now being held in a cell nearby with an electronic connection so that he can hear everything that is said." Id. at 41. The judge continued, "I have assured him that, and I do hereby assure him, that anytime that Mr. Pena agrees that he will not be disruptive, he may tell the Deputy Marshals and they will bring him back to the courtroom where he can hear and see the proceedings entirely." Id. at 41.

The judge proceeded to ask the jurors the following question: "Is there anyone on the jury at this moment that feels that in view of what has transpired in this courtroom that you could no longer be absolutely fair and objective in this case and go ahead and decide it without regard to any of Mr. Pena's outbursts or whatnot?" Id. at 42. No juror expressed doubts about his or her fairness or objectivity, and the trial proceeded. Mr. Pena was provided with an audio and video monitor in the holding cell.

At the end of the first day of the proceedings, the judge told Mr. Pena that he would be allowed to come back to the courtroom if he promised that he would

not be disruptive. The next morning, Mr. Rozan informed the judge outside the presence of the jury that Mr. Pena had told him that he did not want to return to the courtroom. Jury selection continued, and, during the mid-morning recess, the judge and the attorneys went to Mr. Pena's holding cell. The judge handed Mr. Pena a note from his family telling him that he should return to the courtroom. The judge and the attorneys then went back to the courtroom, where they completed jury selection and opening statements and began the government's case.

During the afternoon recess that day, Mr. Rozan told the judge that he had spoken with Mr. Pena and that Mr. Pena had told him that he wanted to return to the courtroom. The judge and the attorneys went to the holding cell and confirmed that statement. Mr. Pena assured the judge and the attorneys that he would not engage in any outbursts. In response to Mr. Rozan's request for an apology, Mr. Pena said, "I would like to apologize to my attorney for one and I would like to apologize to you also for the outburst, I shouldn't have done that. I was wrong." Rec. vol. VII, at 282-83. In response to another question from Mr. Rozan, Mr. Pena said that he agreed that Mr. Rozan was doing his best to represent him.

Mr. Pena then returned to the courtroom, and the judge allowed him to deliver the following statement to the jury: "Excuse me, Jury. I would like to sincerely apologize for my outburst. I should not have done that." Id. at 284.

The judge responded, "That's fine, Mr. Pena. And . . . that covers it nicely. Thank you very much. It is much more orderly and it is nice to have you here."

Id.

The trial proceeded with no further outbursts from Mr. Pena. The jury convicted him of the methamphetamine conspiracy count, and the judge sentenced him to 325 months' imprisonment—within the Guidelines range. Neither the evidence supporting the conviction nor the length of the sentence is at issue in this appeal, and, as a result, we need not summarize the government's evidence.

## II. DISCUSSION

### A. Right to Self-Representation

Mr. Pena first argues that the district court violated his Sixth Amendment right to self-representation. He notes that, in the midst of his complaints about Mr. Rozan during jury selection, he asked the trial judge whether he could represent himself, and the judge did not answer the question. Because the relevant facts are undisputed, we consider this issue de novo. See United States v. Smith, 413 F.3d 1253, 1279 (10th Cir. 2005).

A defendant in a federal criminal case has both a Sixth Amendment and a statutory right to waive his right to counsel and to represent himself. See Faretta v. California, 422 U.S. 806, 835-36 (1975); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or

by counsel."). "The Sixth Amendment right of self-representation differs from other constitutional rights because it cannot be exercised without the concomitant waiver of another fundamental right that is also guaranteed under the Sixth Amendment; the right to counsel." Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000).

Thus, in order to invoke the right to self-representation, a defendant must "[1] clearly and unequivocally assert his intention to represent himself[;] . . . [2] make this assertion in a timely fashion[;] . . . [and] [3] knowingly and intelligently relinquish the benefits of representation by counsel." United States v. Mackovich, 209 F.3d 1227, 1236 (10th Cir. 2000) (internal quotation marks omitted). Additionally, "a defendant must be willing and able to abide by rules of procedure and courtroom protocol." Smith, 413 F.3d at 1279 (quoting McKaskle v. Wiggins, 465 U.S. 168, 173 (1984)).

With regard to the first of these requirements, our sister circuits have held that questions and remarks about self-representation that resemble Mr. Pena's single question to the trial judge ("[C]an I represent myself?") have not constituted a clear an unequivocal request for self-representation. For example, in Jackson v. Ylst, 921 F.2d 882, 889 (9th Cir. 1990), the defendant made the following statement after the trial judge denied his request for substitute counsel: "Hey, I don't see why [the motion for substitute counsel] isn't granted. I'm doing the filing of the motion [for a new trial]. What good is [appointed trial counsel]

doing for me now?  I want to fight in pro per <u>then</u>.  Relieve him and I do this myself." (emphasis in <u>Jackson</u>).

The Ninth Circuit held that the defendant had not clearly and unequivocally invoked his right to self-representation.  "[The defendant's]  comments did not demonstrate unequivocally that he desired to represent himself. Instead, it is quite clear that he wanted to be represented by a different attorney in his efforts to demonstrate that his trial counsel was incompetent."  <u>Id.</u> at 889.  The court reasoned that "[t]he trial court properly may deny a request for self-representation that is a momentary caprice or the result of thinking out loud."  <u>Id.</u> at 888 (internal quotation marks omitted).  <u>See also</u> <u>United States v. Light</u>, 406 F.3d 995, 999 (8th Cir. 2005) (finding no clear and unequivocal request when the  defendant stated "Well, I don't want no counsel then" after the trial court denied his motion for substitute counsel); <u>United States v. Majors</u>, 328 F.3d 791, 794 (5th Cir. 2003) (finding no unequivocal request when defendant asked either for new counsel or permission to make the closing argument himself); <u>Burton v. Collins</u>, 937 F.2d 131, 134 (5th Cir. 1991) (concluding that the defendant's question, "May I represent myself?" asked after the judge informed the defendant that the defendant's counsel would not be replaced, was not a clear request for self-representation).

Like those courts, we conclude that Mr. Pena has failed to establish that he clearly and unequivocally asserted his intention to represent himself.  The sole

-11-

evidence of such an intention is the one question ("[c]an I represent myself?") that Mr. Pena asked in the middle of a colloquy with the judge that primarily concerned his dissatisfaction with his current counsel Mr. Rozan and his request for a new attorney. Indeed, it may have been that the judge did not hear the question, given the exchange of comments in the courtroom. When the judge did not answer his question about self-representation, Mr. Pena did not pursue the issue in any way: neither in the trial proceedings nor in a written motion did he ever mention self-representation again. Moreover, in his statements to the judge after his question about representing himself, Mr. Pena continued to express his dissatisfaction with Mr. Rozan and his request for a different lawyer. See Rec. vol. VI, at 36. ("And it is not that I want to go back to Mr. Pretty [Mr. Pena's former trial counsel]. You could send me to whoever you want to send me to. It is just I know for sure that this is not the kind of person that I want to be represented by right here in any kind of way. And that's just pretty much all I can say about those things.").

In support of his argument that the district court violated his right to self-representation, Mr. Pena cites our decision in United States v. McKinley, 58 F.3d 1475 (10th Cir. 1995). According to Mr. Pena, in that case, "this same [j]udge faced the same issue and he made the same mistake and ruling." Aplt's Br. at 10. However, in McKinley, the defendant, through counsel, filed a pre-trial motion in which he specifically requested that he be allowed to represent himself. In

-12-

concluding that the district court had erred in denying the defendant's request, we observed that he had "unequivocally and timely asserted that he wanted to represent himself[,]" and that "[t]here is no suggestion in the record that his intended waiver of counsel was not knowing and intelligent. Nor is there sufficient evidence in the record that Mr. McKinley intended to disrupt or delay the proceedings." 58 F.3d at 1482-83.

Here, Mr. Pena did not make such an unequivocal and timely request. And he has identified no decision in which such a "momentary caprice or . . . result of thinking out loud[,]" Jackson, 921 F.2d at 888, has been deemed sufficient. We therefore conclude that the district court did not violate Mr. Pena's Sixth Amendment right to self-representation.

### B. Denial of Motion to Recuse the Jury Panel

Mr. Pena further argues that the district court erred in denying his motion to recuse the jury panel that heard his initial statement that he was dissatisfied with Mr. Rozan's representation. We review the district court's decision for an abuse of discretion. See United States v. Black, 369 F.3d 1171, 1177 (10th Cir. 2004). "When a mistrial motion is based on the assertion that disruptive incidents have prejudiced the jurors, the standard is whether there has been an impingement upon the right of the [defendant] to be tried before a fair and impartial jury." Id. (internal quotation marks omitted).

Here, in support of his motion to recuse the jury panel, Mr. Rozan argued that "the emotional outburst [by] . . . Mr. Pena [has] potentially biased them to potentially rob them of any objectivity they might have in this cause." Rec. vol. VI, at 39. As we have noted, the trial judge proceeded to ask the prospective jurors if they felt that they could no longer be fair and objective because of Mr. Pena's outbursts, and no one answered affirmatively. The court then denied the motion and allowed the trial to proceed.

"[I]n the vast majority of cases, the trial judge can cure the bias that may develop in jurors' minds by issuing cautionary instructions and conducting voir dire." United States v. Mannie, 509 F.3d 851, 856 (7th Cir. 2007). Moreover, "it is presumed that the trial judge is in the best position to determine whether a cautionary instruction, rather than a mistrial, is sufficient to address any potential prejudice." Id. at 856.

Here, we have no reason to question the trial judge's conclusion that Mr. Pena could receive a fair trial despite the remarks heard by the jury panel As the government notes, the jury panel heard only a few statements from Mr. Pena about his discontent with Mr. Rozan. Mr. Pena stated that "I have to something to say . . . because someone has to speak up for my rights because my lawyer is not . . . . He is not working for me." He added: "Someone needs to hear me because no one is hearing me" and that "I cannot stand no longer and go for this." Finally, he said, "You guys are going to have to remove me, then. The jury-- I

apologize for this." Rec. vol. VI, at 18. At that point, the judge removed the jury panel and heard Mr. Pena's complaints.

These statements before the jury panel concerned only Mr. Pena's dissatisfaction with Mr. Rozan. They did not address the government's allegations, the evidence in the case, or Mr. Pena's defense. Thus, there is no indication that the statements could have affected the jury's judgment. Moreover, when the prospective jurors returned to the courtroom, the trial judge carefully explained to them that Mr. Pena had been disruptive, that Mr. Pena "did not feel comfortable with Mr. Rozan, and that he felt he wouldn't get a fair trial." Id. at 42. However, the judge continued, he had determined that Mr. Rozan was competent and that he was ready for trial.

Accordingly, we conclude that the trial judge did not abuse his discretion in denying Mr. Pena's motion to recuse the jury panel.

### C. Right to Counsel of Choice

Finally, Mr. Pena argues that the district court erred in denying him a continuance so that he could obtain the counsel of his choice. His argument is based on the Supreme Court's decision in United States v. Gonzalez-Lopez, 126 U.S. 2557 (2006). There, the Court held that when a court "wrongly denie[s]" a defendant his counsel of choice, the error is structural, and thus not subject to harmless error analysis. Id. at 2563.

-15-

As the government explains, however, <u>Gonzalez-Lopez</u> does not address the particular question at issue here—whether the district court erred in not granting a continuance so that Mr. Pena could obtain new counsel. As to that question, however, this court has offered some guidance.

In <u>United States v. Flanders</u>, 491 F.3d 1197, 1216 (10th Cir. 2007), we observed that, in reviewing the district court's denial of a continuance to allow the defendant to obtain new counsel, the court must "balanc[e] the defendant's constitutional right to retain counsel of . . . choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice." (internal quotation marks omitted).

> In striking that balance, we consider whether: (1) the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) other continuances have been granted; (3) legitimate reasons warrant a delay; (4) the defendant's actions contributed to the delay; (5) other competent counsel is prepared to try the case; (6) rejecting the request would materially prejudice or substantially harm the defendant's case; (7) the case is complex; and (8) any other case-specific factors necessitate or weigh against further delay.

<u>Id.</u> We review the district court's decision for an abuse of discretion. <u>Id.</u>

Here, it is not entirely clear that Mr. Pena actually requested counsel of his choice after he announced his dissatisfaction with Mr. Rozan. At certain points, he appeared to request the court to allow the attorney who had initially been appointed for him (Mr. Pretty) to re-enter the case. At other times, Mr. Pena

stated more broadly that he wanted any attorney other than Mr. Rozan to represent him. As the government observes, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." See Gonzalez-Lopez, 126 S. Ct. at 2565; see also id. at 2561 (stating that "'[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney <u>whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds</u>'") (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625 (1989)) (emphasis added).

In any event, even affording Mr. Pena the benefit of the doubt and assuming that his various statements to the trial judge constituted a request that he be allowed to obtain a new attorney of his choice, we discern no abuse of discretion in the district court's denial of that request. Mr. Pena waited until jury selection in open court to voice his concerns, and, as a result, a continuance would have inconvenienced witnesses, the court, counsel, and the parties. See Flanders, 491 F.3d at 1216 (stating that "[d]ue to . . . scheduling burdens[,]" the district courts have broad discretion in granting continuances and "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel") (internal quotation marks omitted). Moreover, Mr. Pena has failed to explain why he waited until the first day of trial to inform the court about his concerns with Mr.

Rozan. <u>Cf. id.</u> at 1216-1217 (concluding that the district court did not abuse its discretion in denying a motion for a continuance to obtain new counsel filed "on the eve of trial").  Additionally, Mr. Pena has failed to establish that there were "legitimate reasons for the delay" or that "rejecting the request . . . materially prejudice[d] or substantially harm[ed] [his] case." <u>Id.</u> at 1216.  Indeed, Mr. Pena seems to have changed his mind about retained counsel Mr. Rozan by the second day of trial.  There is no indication that Mr. Pena had any further complaints about Mr. Rozan, and Mr. Pena has not argued that Mr. Rozan's continued representation during the trial proceedings adversely affected the defense.

## III.  CONCLUSION

We therefore affirm Mr. Pena's conviction and sentence.

Entered for the Court,

Robert H. Henry
Chief Judge