Vernon JACKSON, Petitioner–Appellant,

v.

Eddie YLST, Respondent–Appellee.

No. 88–15605.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 10, 1990 *.

Submission Vacated Jan. 30, 1990.

Resubmitted Aug. 20, 1990.

Decided Dec. 13, 1990.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Arthur W. Ruthenbeck, Federal Public Defender, Sacramento, Cal., for petitioner-appellant.

Jane N. Kirkland, Supervising Deputy Atty. Gen., Sacramento, Cal., for respondent-appellee.

Before WALLACE, ALARCON and LEAVY, Circuit Judges.

ALARCON, Circuit Judge:

Vernon Jackson, a state prisoner, appeals from the district court's denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. A jury convicted him of armed robbery in a California state court. He was sentenced to serve eight years in prison.

Jackson claims that his conviction was obtained in violation of the federal Constitution. He contends that the state trial judge deprived him of due process, equal protection, the right to the effective assistance of counsel in presenting his motion for new trial, and the sixth amendment right to represent himself during the sentencing proceedings. We disagree and affirm.

## I.

## FACTS

Jackson was convicted of armed robbery. The victim, Manuel Gouvaia, is the owner of a coin shop. Gouvaia testified that he knew Jackson because Jackson had been to the coin shop on previous occasions to purchase baggies. The store's security system required Gouvaia to press a button that unlocked the front door and allowed patrons to enter. On the day of the robbery, Gouvaia opened the door for Jackson because he recognized him from previous visits. Gouvaia testified that once inside, Jackson pulled a gun and demanded money. He then forced Gouvaia to lie on the floor and opened the door for his accomplice, Curtis Matthews.

While Jackson and Matthews were looking around in the back of the store, Gouvaia tripped a silent alarm. The police arrived and ordered Matthews and Jackson to come out with their hands up. Matthews came out but Jackson did not. Police fired tear gas into the shop. They ordered anyone present in the shop to step outside. Jackson did not respond or leave the building. When no one came out, the police searched the shop. They found Jackson hiding in the attic. Jackson was the only person in the store at the time of his arrest. The police searched Jackson's car, which was parked near the coin shop. They found Matthews's wallet and a bullet.

Jackson's theory of defense at trial was that Gouvaia mistakenly identified him as one of the robbers because his photograph had appeared in the newspaper after his arrest and he had been in the shop previously. Jackson also attempted to impeach Gouvaia's identification testimony by offering evidence that he was not wearing his glasses and had poor eyesight.

On direct examination, Matthews testified as a defense witness. Matthews testified that he did not know Jackson. On cross-examination, however, he testified that he was afraid of Jackson because Jackson had threatened him with violence if he were not acquitted.

Jackson testified that he had innocently gone to Gouvaia's shop to buy baggies in which to pack his marijuana. When he entered Gouvaia's shop, a man allegedly drew a gun on him and a second person struck him on the head. Jackson said the men then tied him up with a belt and left him alone. Being a self-proclaimed expert with knots, he was able to free himself and, for purposes of "self-preservation," climb into the attic.

Jackson testified that he did not come out of the building when the police ordered him to do so, because he did not commit any robbery. He said he remained in the attic hoping the police would find him. Jackson testified that he did not respond when the police entered the attic and called out to him because he had "dozed off" in his excitement.

After being taken into custody, Jackson refused to identify himself to the officers. He explained to the jury that he refused to identify himself to the police because he was on parole and didn't want to go back to the "pen", and he didn't want his "name slandered ... [y]ou know, Vernon Jackson [seen] coming out of the coin shop."

Jackson was found guilty and sentenced to state prison. The California State Court of Appeal affirmed Jackson's conviction on March 25, 1987, and the California Supreme Court denied review on June 24, 1987. The California Supreme Court also denied Jackson's petition for habeas corpus on December 31, 1987. On February 17, 1988, having exhausted his state remedies, Jackson filed a petition for habeas corpus in federal district court. On October 4, 1988, the district court entered a judgment dismissing Jackson's petition. Jackson timely appealed.

## II.

### APPOINTMENT OF EXPERT ON EYEWITNESS IDENTIFICATION

Jackson argues that the state court violated his right to due process, to equal protection, and to the effective assistance of counsel in refusing to authorize funds for the appointment of an expert witness on eyewitness identification. He also argues that California has created a protected liberty interest in having an eyewitness expert appointed under the fourteenth amendment which was violated. Before his trial in state court, Jackson made a motion for appointment of an expert on eyewitness identification based on *People v. McDonald*, 37 Cal.3d 351, 690 P.2d 709, 208 Cal.Rptr. 236 (1984). The California Supreme Court held in *McDonald* that:

> [w]hen an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony.

37 Cal.3d at 377, 208 Cal.Rptr. 236, 690 P.2d 709. The Court stated that the decision whether to admit or exclude such expert testimony "remains primarily a matter within the trial court's discretion; ... in the usual case the appellate court will continue to defer to the trial court's discretion in this matter." *Id.*

■ We begin our analysis of this contention by noting that we have no authority to review a state's application of its own laws. *Guzman v. Morris*, 644 F.2d 1295, 1297–98 (9th Cir.1981). Our duty is to determine whether the prisoner's constitutional or other federal rights have been violated. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871–874, 79 L.Ed.2d 29 (1984). Therefore, Jackson can prevail only if he can demonstrate that, prior to the date his direct appeal became final, he had a federal constitutional right to have an eyewitness identification expert appointed, or that the *McDonald* case creates a liberty interest in the appointment of such an expert that is cognizable under the fourteenth amendment.

### A. *Jackson's Federal Claim Under Ake v. Oklahoma*

Because Jackson's claim of a federal constitutional violation "is before us on collateral review, we must first determine whether the relief sought would create a new rule under [the Supreme Court's] holdings." *Saffle v. Parks*, — U.S. —, 110 S.Ct. 1257, 1259, 108 L.Ed.2d 415 (1990). "If so, we will neither announce nor apply the new rule ... unless it would fall into one of two narrow exceptions." *Id.* at 1259–60. A new rule is "a rule that 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated*' by precedent existing at the time the defendant's conviction became final.'" *Id.* at 1260 (quoting *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989)) (emphasis in original). The relevant inquiry is "whether a state court considering [petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Id.* The principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered. *Sawyer v. Smith*, — U.S. —, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990).

In the instant matter, Jackson would have us extend the Supreme Court's holding in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to encompass an indigent defendant's request for the appointment of an expert on eyewitness identification. In *Ake*, the Supreme Court held that, upon request, a trial court must appoint a psychiatrist for an indigent if his or her sanity will "be a significant factor at trial." *Id.* at 83, 105 S.Ct. at 1096.

No issue was presented to the Supreme Court in *Ake* concerning the right of an indigent to the appointment of an expert on eyewitness identification. The parties have not cited any authority that holds that the federal constitution requires the appointment of such an expert. Thus, a holding by this court that, as a matter of due process, a state court must appoint an expert on eyewitness identification, would create a "new rule" which would "impose[ ] new obligation on the [s]tates." *Teague v. Lane*, 109 S.Ct. at 1070. In fact, in prior cases we have concluded that the district court did not abuse its discretion in denying an application for the appointment of an expert on eyewitness identification because cross-examination is sufficient to "alert jurors to specific conditions that render a particular eyewitness identification unreliable." *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir.1987); *see also United States v. Brewer*, 783 F.2d 841, 842–43 (9th Cir.), *cert. denied*, 479 U.S. 831, 107 S.Ct. 118, 93 L.Ed.2d 64 (1986) (upholding trial court's decision not to appoint eyewitness expert under 18 U.S.C. § 3006A(e)(1) because cross-examination was sufficient).

The Supreme Court has created two exceptions to the principle that a new rule may not be adopted in reviewing a challenge by a state prisoner to his conviction pursuant to 28 U.S.C. § 2254. "Under the first exception, 'a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." ' " *Butler v. McKellar*, —— U.S. ——, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347 (1990) (quoting *Teague*, 109 S.Ct. at 1073 (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1179, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgment in part and dissenting in part))). Jackson does not contend that California did not have the authority to proscribe armed robbery.

"The second exception is for 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle*, 110 S.Ct. at 1263 (quoting *Teague*, 109 S.Ct. at 1075).

This exception is limited to procedures "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 109 S.Ct. at 1077. As an example of a "watershed" rule the Supreme Court refers us to *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Saffle*, 110 S.Ct. at 1264. A rule requiring the appointment of an expert on eyewitness identification does not come within the second exception. We have previously held that the appointment of such an expert is not required because cross-examination effectively exposes erroneous eyewitness identifications. *Christophe*, 833 F.2d at 1300. Thus, the rule proposed by Jackson mandating the appointment of an expert on eyewitness identification fails the "watershed test" because it would not implicate fundamental fairness or the accuracy of a criminal proceeding.

B. *The Alleged State–Created Liberty Interest*

Jackson also contends that in *People v. McDonald*, the California Supreme Court created a liberty interest that is protected under the federal constitution in the appointment of an eyewitness identification expert. He argues that the denial of his application for the appointment of an expert on eyewitness identification violated this constitutionally protected liberty interest.

"The threshold question in due process analysis is whether a constitutionally protected interest is implicated." *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 843 (9th Cir.1985). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). "A state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." *Baumann*, 754

F.2d at 844. The petitioner "must show 'that particularized standards or criteria guide the State's decisionmakers.'" *Id.* (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)). "There must be 'objective and defined criteria' which the decision-maker is *required* to respect." *Id.* (quoting *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747) (emphasis added).

Jackson contends that *"McDonald* establishes a particularized criterion which sufficiently limit [sic] trial court discretion, and thereby create [sic] a constitutionally protected liberty interest" in the appointment of an eyewitness identification expert.

In *McDonald,* the California Supreme Court did not hold that an indigent defendant was entitled to the appointment of an expert on eyewitness identification. Instead, the California Supreme Court set forth the test for the *admissibility* of eyewitness identification expert testimony. 37 Cal.3d at 377, 208 Cal.Rptr. 236, 690 P.2d 709. The decision to admit or exclude such testimony was left to the discretion of the trial judge. *Id.* The California Supreme Court did not discuss the duty to appoint an expert on eyewitness identification in *McDonald,* nor did it provide "particularized standards" or "objective and defined criteria" that would control the trial court's ruling on such a request. Accordingly, *McDonald* did not create a protected liberty interest in the appointment of an expert for indigent defendants.

### III.

### THE RIGHT TO SUBSTITUTE COUNSEL ON A NEW TRIAL MOTION

Jackson argues that when he "moved for a new trial on the basis of ineffective assistance of counsel, he created a conflict which rendered his counsel ineffective to argue the motion." No authority is cited for the proposition that the claim that trial counsel was ineffective automatically entitles a state prisoner to substitute counsel.

While still represented by appointed counsel, Jackson informally presented his claim of incompetency of counsel in a series of letters to the trial judge. In this correspondence, Jackson requested the appointment of substitute counsel to argue his new trial motion. The request was based on his trial attorney's alleged incompetence.

At the hearing on Jackson's motion, the trial court denied the motion for substitute counsel and the motion for a new trial. In this appeal, Jackson argues that once he "moved for a new trial based on ineffective assistance of counsel, the judge should have appointed new counsel to prepare and argue his claim."

■ Because the question whether an indigent who seeks a new trial on the ground of incompetency of trial counsel has a sixth amendment right to the appointment of substitute counsel is presented to us in a collateral attack on a state court judgment, we must first determine whether the recognition of such a constitutional right would "break[ ] new ground" and "impose[ ] a new obligation" on state courts. *Teague,* 109 S.Ct. at 1070. Jackson cites no authority for the proposition that a state prisoner has an automatic sixth-amendment right to the appointment of substitute counsel in post-trial proceedings conducted prior to the entry of final judgment. It has been clear since *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that an indigent state prisoner is entitled to the appointment of counsel to represent him at every critical stage of the proceedings against him. *Id.* at 339–45, 83 S.Ct. at 793–97. It is undisputed that Jackson was represented by counsel at the hearing on the motion for a new trial. Jackson insists he has a constitutional right to the appointment of substitute counsel solely because of his claim that his trial counsel was incompetent. While we have not been previously presented with the question whether new counsel must automatically be appointed upon demand to represent an indigent at a motion for a new trial based on incompetency of trial counsel, we have held that when such a claim is made the day before trial, the trial judge has the discretion to reject or

grant a substitution of counsel. *United States v. Wagner*, 834 F.2d 1474, 1481–82 (9th Cir.1987). In *Hudson v. Rushen*, 686 F.2d 826 (9th Cir.1982), *cert. denied*, 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983), we held that a defendant who makes a motion during trial for substitution of counsel based on incompetence of counsel or conflict of interest is *not* entitled to an *automatic* appointment of a new attorney. *Id.* at 832. Thus, under the law of this circuit, there is no automatic right to a substitution of counsel simply because the defendant informs the trial court that he is dissatisfied with appointed counsel's performance.

Because Jackson's claim that he is entitled to a substitution of counsel is unsupported by existing case law, we must decide whether it falls within either of the two exceptions to the principle that we cannot adopt and apply retroactively new federal constitutional rights in state prison habeas corpus proceedings. Clearly, the first exception does not apply because we are not concerned with Jackson's alleged criminal conduct. The second exception that permits the pronouncement of "watershed" rules of criminal procedure, is equally inapplicable. The rule proposed by Jackson "has none of the primacy and centrality of the rule adopted in *Gideon.*" *Saffle*, 110 S.Ct. at 1264. Failure to adopt a rule requiring the automatic substitution of counsel, whenever a state prisoner files a motion for a new trial based on competency of counsel, will not seriously diminish the likelihood of an accurate conviction.

■■■ A state prisoner has a right to competent counsel in presenting a new trial motion. *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir.1989). A trial judge is required to order a substitution of counsel if, after a hearing, it is demonstrated that there is a breakdown in the attorney-client relationship or that "an actual conflict of interest existed." *Wood v. Georgia*, 450 U.S. 261, 273–74, 101 S.Ct. 1097, 1104–05, 67 L.Ed.2d 220 (1981). Holding a hearing to review a defendant's incompetency claim insures that the trial is fundamentally fair. The trial judge conducted a hearing to review Jackson's claims. The procedure followed by the trial court did not diminish the likelihood of an accurate conviction.

## IV.

### JACKSON'S REQUEST TO PROCEED PRO SE

Jackson argues that the district court denied him his constitutional right to self-representation. This contention lacks merit.

■■■ A defendant in a state court criminal proceeding has an absolute right to be represented by counsel or to represent himself. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). The constitutional right of self-representation is waived if it is not timely and unequivocally asserted. *United States v. Smith*, 780 F.2d 810, 811 (9th Cir.1986) (per curiam); *United States v. Weisz*, 718 F.2d 413, 426 (D.C.Cir.1983) ("the right of self-representation is waived unless defendants articulately and unmistakably demand to proceed *pro se*"), *cert. denied*, 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984); *United States v. Kizer*, 569 F.2d 504, 507 (9th Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978) A *Faretta* request is timely if it is asserted "before the jury is empaneled, unless it is made for the purpose of delay." *Smith*, 780 F.2d at 811 (citations omitted). Jackson's request for self-representation was untimely because it was not asserted until after his request for substitute counsel and his motion for a new trial were denied.

■■■ In addition to being untimely, Jackson's request for self-representation was not unequivocal. *See Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989) (request to proceed pro se must be unequivocal). The trial court properly may deny a request for self-representation that is "a momentary caprice or the result of thinking out loud." *Id.* at 1445. The record demonstrates that Jackson's request for self-representation was an impulsive response to the trial court's denial of his request for substitute counsel. Upon being informed that his motions had been denied, Jackson

 

stated: "Hey, *I don't see why* [the motion for substitute counsel] *isn't granted.* I'm doing the filing of the motion [for a new trial]. What good is [appointed trial counsel] doing for me now? I want to fight in pro per *then.* Relieve him and I do this myself." (emphasis added). Jackson's comments did not demonstrate unequivocally that he desired to represent himself. Instead, it is quite clear that he wanted to be represented by a different attorney in his efforts to demonstrate that his trial counsel was incompetent. At the sentencing hearing, Jackson did not object to the presence of his appointed counsel, nor did he renew his request to proceed pro se. In *Adams v. Carroll,* we pointed out that "[b]ecause a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself." *Id.* at 1444.

The state trial judge did not err in denying Jackson's request for self-representation. Jackson's emotional response when disappointed by the trial court's denial of his motion for substitute counsel did not demonstrate to a reasonable certainty that he in fact wished to represent himself. Because Jackson's request for self-representation was an untimely and an equivocal, emotional reaction to the rejection of his request for representation by substitute counsel, he has failed to demonstrate that his sixth amendment right to self-representation was violated in the state court proceedings.

## CONCLUSION

The district court properly dismissed Jackson's habeas corpus petition. Jackson's claim that the trial court violated his constitutional rights by failing to appoint an expert on eyewitness identification, as well as his claim that he had an automatic right to substitute counsel upon making a motion for new trial based on ineffectiveness of counsel, propose new rules that cannot not be announced in habeas corpus proceedings. In addition, California has not created a protectible fourteenth amendment right to the appointment of an expert on eyewitness identification. Jackson waived his right to proceed pro se because his request was both untimely and equivocal.

AFFIRMED.