United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-70018

_____

TONY EGBUNA FORD,

Petitioner - Appellant,

versus

DOUG DRETKE,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas, El Paso Division
District Court Cause No. 01-CA-386

_____

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.

PER CURIAM:[*]

Tony Egbuna Ford, a Texas inmate, appeals from the district court's denial of his application for fedeal habeas relief under 28 U.S.C. § 2254. A jury convicted Ford of capital murder, and the state trial judge sentenced Ford to death. Ford claims that his conviction was obtained in violation of the federal constitution. After considering Ford's arguments, the court affirms the district court's judgment.

_____

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

## Background of the Appeal

Ford's conviction arose from a home invasion in which two young black men forcibly entered a Hispanic woman's home. At the time of the break-in, the mother's teenage son, Armando, and her two adult daughters, Myra and Lisa, were at the house. After breaking into the house, the two men demanded that the occupants give them "the money." When the family responded that they had no money, the men demanded jewelry and the family complied. The men then demanded the keys to the car parked outside the house. Lisa threw the keys toward one of the men, who wore a long dark coat. After Lisa threw the keys, the man in the long dark coat fired a gun at each member of the family. Armando was hit and died instantly. Lisa and her mother were also hit, but survived; the mother, however, was left severely disabled. When the shooter fired at Myra, she fell to the floor and pretended to be hit.

Shortly after the incident, Myra and Lisa identified Ford as the shooter using a police photo identification lineup. A Texas grand jury then indicted Ford for the capital murder of Armando and the attempted capital murders of Myra, Lisa, and the mother. Prior to trial, Ford filed a motion asking the trial judge to appoint him an expert on eyewitness identification. Ford argued that he needed an expert to dispel common notions that eyewitness accounts of events are infallible and necessarily accurate. Ford

2

explained that Myra and Lisa were under a great deal of stress when they observed the shooter and that they did not view the shooter for an extended period of time. The trial judge denied the motion, and Ford proceeded to trial without an expert.

Myra and Lisa testified at Ford's trial and identified Ford as the shooter. The only other evidence linking Ford to the crime was a long dark coat Ford was wearing when he was arrested. Ford testified during his trial and maintained that he never entered the house. Ford explained that although he drove to the house with Van Nash Belton and Van Nash's younger brother, Victor Belton, he stayed outside while Van Nash and Victor entered the house. Ford, Van Nash, and Victor are all black. Ford explained that he gave his coat to Victor to conceal a gun. Although the State introduced Ford's coat as evidence, Ford did not admit the coat was his.

A Texas jury convicted Ford of the capital murder of Armando on July 9, 1993 and assessed a death sentence. The Texas Court of Criminal Appeals affirmed the conviction and the sentence. Later, the Court of Criminal Appeals denied Ford's state habeas corpus petition.

Ford filed for federal habeas relief on July 24, 2002. The district court entered a final judgment denying relief and denying Ford a certificate of appealability (COA) on April 5, 2004. Ford then filed a notice of appeal, and this court granted a COA on three issues: (1) whether the trial court erred in

3

denying Ford a court-appointed expert, (2) whether Ford's trial attorneys were ineffective for failing to pursue the motion for an expert on eyewitness identification, and (3) whether Ford's appellate attorney was ineffective for failing to challenge the performance of his trial attorneys on appeal.

**Ford's Request for an Expert Witness**

Ford maintains that Myra and Lisa were mistaken in their identifications of him as the shooter and that Victor Belton was the actual shooter. In his petition for federal habeas relief, Ford argued that the state trial judge denied his due process right to an eyewitness identification expert. Ford argued that he was entitled to an expert under the Supreme Court's opinion in *Ake v. Oklahoma* because he demonstrated that the reliability of the eyewitness testimony would be a significant factor at trial. To show the importance of an expert to his defense, Ford presented a report by Dr. Roy S. Malpass, an expert on eyewitness identification. In the report, Dr. Malpass reported the results of a study establishing facial similarities between Ford and Victor, discussing the risk of erroneous identification in cross-race identifications, and explaining how the presence of a weapon and stress decrease the reliability of an eyewitness's identification. After considering Ford's argument, the district court determined that Ford had not rebutted the presumptive correctness of the state trial court's factual findings—that

4

Ford was not mistakenly identified by the eyewitnesses and there was no impropriety in the way the police conducted the photo lineup that led to Ford's identification. The district court observed that no persuasive evidence existed that Myra and Lisa actually identified the wrong man.

Because Ford's claim is before the court on collateral review, the court must first determine whether the relief Ford seeks would create a new rule.[1] "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."[2] If resolving the claim in Ford's favor would create a new rule of law, the court will neither announce nor apply the new rule unless it falls into one of two narrow exceptions.[3] "Under the first exception, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe."[4] "Under the second exception, a new rule may be applied on collateral review if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty."[5]

---

[1]*Saffle v. Parks*, 494 U.S. 484, 487 (1990).

[2]*Teague v. Lane*, 489 U.S. 288, 301 (1989).

[3]*Saffle*, 494 U.S. at 87-88.

[4]*Butler v. McKellar*, 494 U.S. 407, 415 (1990) (internal quotations and citations omitted).

[5]*Butler*, 494 U.S. at 416.

5

In the instant case, Ford would have the court extend *Ake v. Oklahoma*.[6]  In *Ake*, the Supreme Court held that, upon request, a trial court must appoint a psychiatrist for an indigent defendant if the defendant demonstrates that his sanity will be a significant factor at trial.[7]  The Court explained that "when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense."[8]  Ford contends that the state trial judge should have granted his request for an expert because his identification as the shooter was a significant factor at trial and an expert was crucial to his defense.  The *Ake* Court, however, did not consider the right of an indigent defendant to the appointment of an expert on eyewitness identification.  Instead, the Court was concerned with ensuring that an indigent defendant has access to the basic tools for an adequate defense.[9]  Cross-examination of an eyewitness is the most basic tool for an adequate defense where the defendant maintains the witness is mistaken.  As far as this court has determined, no authority exists that requires a trial court to

---

[6]*Ake v. Oklahoma*, 470 U.S. 68, 70 (1985).

[7]*Ake*, 470 U.S. at 70.

[8]*Id*. at 80.

[9]*See id*. at 77.

appoint an expert in eyewitness identification.[10]  Thus, Ford
seeks a new rule of law because the appointment of an expert "was
not dictated by precedent existing at the time [his] conviction
became final."[11]

Because Ford seeks a new rule of law, the court must
determine whether the rule falls into one of the two exceptions
to rule against application of a new rule of law on collateral
review.[12]  The first exception——where the rule places certain
kinds of primary, private individual conduct beyond the power of
the criminal law-making authority to proscribe[13]——does not apply
because Ford does not contend that Texas may not proscribe
capital murder.[14]  The second exception——where the rule requires
the observance of procedures that are implicit in the concept of
ordered liberty——is reserved "'for watershed rules of criminal
procedure' implicating the fundamental fairness and accuracy of
the criminal proceeding,"[15] such as the right to counsel in

---

[10]*Jackson v. Ylst*, 921 F.2d 882, 886 (9th Cir. 1990).

[11]*Teague*, 489 U.S. at 301.

[12]*Jackson*, 921 F.2d at 886.

[13]*Butler*, 494 U.S. at 415.

[14]*See Jackson*, 921 F.2d at 886 (making the same
determination in a case where a California inmate challenged the
denial of his request for an eyewitness expert in a federal
habeas petition).

[15]*Saffle*, 494 U.S. at 495 (quoting *Teague*, 489 U.S. at 311).

criminal proceedings for serious offenses.[16]  These watershed rules are ones  "without which the likelihood of an accurate conviction is seriously diminished."[17]  A rule requiring the appointment of an expert on eyewitness identification does not fall within the second exception because an effective cross-examination will ordinarily expose an erroneous eyewitness identification.[18]  The rule proposed by Ford requiring the appointment of an expert on eyewitness identification fails the "watershed test" because it does not implicate fundamental fairness or the accuracy of a criminal proceeding.[19]

Because the rule Ford seeks does not fall within one of the exceptions to the rule against the application of a new rule on collateral review, the court will not consider Ford's due process argument further.

### Standard of Review

As for Ford's remaining claims, the standards established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) govern Ford's application for federal habeas relief.  Under the AEDPA, this court may not grant relief on a claim the state

---

[16]*Id.*

[17]*Teague*, 489 U.S. at 313.

[18]*United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987).

[19]*See Jackson*, 921 F.2d at 886.

8

courts have adjudicated on the merits "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[20]  "A state court's decision is deemed 'contrary to' clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."[21]  "A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable."[22]  This court presumes the state court findings of fact are correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.[23]  The court reviews the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standards to the state court's decision as did the district court.[24]

**Ford's Ineffective Assistance of Trial Counsel Claim**

---

[20]28 U.S.C. § 2254(d)(1).

[21]*Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

[22]*Pondexter v. Dretke*, 346 F.3d 142, 146 (5th Cir. 2003).

[23]*See* 28 U.S.C. § 2254(e)(1).

[24]*See Busby*, 359 F.3d at 713.

9

Ford's attorneys filed the motion for the appointment of an expert on July 6, 1992. The state trial judge first considered the motion during a hearing on August 5, 1992. During the hearing, the trial judge expressed his concern that an expert would invade the province of the jury, but postponed further consideration of the motion until a second hearing on April 2, 1993. During that hearing, the prosecutor suggested that a state court opinion existed that held that eyewitness expert testimony was not admissible at trial. The judge directed the prosecutor to provide him with a copy of the opinion and stated that he would hold Ford's motion in abeyance. The judge then told Ford's attorneys, "If it's not brought to me within the two week period, then you reurge your motion. Otherwise, it's overruled." The record does not reflect that the prosecutor ever presented the opinion to the trial judge. Ford's attorneys did not reurge the motion.

In his petition for federal habeas relief, Ford argued that his trial attorneys were ineffective because they failed to pursue his motion for the appointment of an expert after the trial judge gave them the opportunity to provide authority for the motion. The district court considered this claim de novo because the state habeas court did not make a specific finding about deficient performance. The district court concluded that Ford failed to meet his burden to demonstrate ineffective assistance because he did not show that, as of the date of his

10

trial, a United States Supreme Court opinion established a right to a court-appointed eyewitness identification expert and that he failed to overcome the presumption that his attorneys acted reasonably.

To establish ineffective assistance of counsel, a criminal defendant must show that his attorney's assistance was deficient and that the deficiency prejudiced him.[25] "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"[26] "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."[27]

The circumstances here do not indicate that Ford's trial attorneys were ineffective. Even though they were unsuccessful in obtaining the appointment of an eyewitness expert and failed to further urge the motion when given the opportunity, Ford's attorneys presented Ford's defense of mistaken identity by effectively cross-examining Myra and Lisa and demonstrating the possibility that the sisters were mistaken in their identification of Ford as the shooter.

---

[25]*Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir.), *cert. denied*, 504 U.S. 968 (2003).

[26]*Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

[27]*Strickland v. Washington*, 466 U.S. 668, 688 (1984).

11

During his cross-examination of Myra, Ford's attorney cast doubt on Myra's identification of Ford by showing that Myra avoided looking at the intruders because she recognized Van Nash as a familiar face and did not want him to recognize her. During cross, Myra admitted that she looked down much of the time the men were in the house. The attorney also explored the discrepancies in Myra's description of Ford. Myra testified that the shooter was between five-four and five-five, wore a knitted cap that covered his hair and ears, and had a clear face. Cross-examination also established that on the night of the shootings, Myra described the shooter as being small-framed and with a clear complexion. These descriptions contrasted sharply with Ford's actual height of five-eight and his complexion which was marred by seven scars. Myra admitted that she never told the police that the shooter had any scars on his face. The attorney also established that although Myra testified on direct that she saw Ford shoot her brother and her mother, on the night of the incident, she did not tell the police that she actually saw the shooter shoot them. Instead, Myra told the police that she saw the back of the shooter and heard gunshots. Myra's cross-examination also showed that Myra viewed the shooter for a very short period of time; Myra estimated the shooting incident took between two and five seconds.

The attorney also cast doubt on Lisa's identification. During cross, Ford's attorney established that Lisa did not see

the shooter shoot members of the family because she had buried her face in a pillow; instead, the attorney showed that Lisa simply heard the gunshots. The attorney also showed that very shortly after the incident, Lisa was unable to give the police an accurate description of the men who entered her mother's house. Like Myra, Lisa described the shooter as having a very clear complexion and never mentioned that the shooter had scars on his face. The attorney confirmed with Lisa that the shooting incident occurred in a very short time period——in just five seconds, emphasizing the short period of time the sisters viewed the shooter.

Notably, the attorneys succeeded in getting a photo of Victor Belton admitted into evidence. The photo was taken very shortly after the murder. Using the photo, the attorneys compared the physical characteristics of Ford and Victor Belton and explained how Ford and Victor Belton were the same height and were very close in weight and age. During closing arguments for the guilt-innocence phase of trial, Ford's attorney compared the relative weight, height, skin color, and facial features of Ford and Victor to show the jury how the sisters could be mistaken in their identifications of Ford. In addition, he emphasized how the physical similarities between Ford and Victor Belton, the stress of the situation, and the short period of time that the shooting occurred would have made it difficult for the sisters to remember precisely what the intruders looked like and could have

13

resulted in a mistaken identity.  Thus, although they did not

reurge the motion, the attorneys presented the substance of what

an eyewitness expert would have contributed.  In the absence of

controlling authority requiring the appointment of an expert on

eyewitness identification, the district court was correct: the

performance of Ford's attorneys was not objectively unreasonable.

**Whether Appellate Counsel Was Ineffective**

Ford also complained in his federal habeas petition that his

appellate attorney was ineffective for failing to raise a due

process claim based on the failure of Ford's trial attorneys to

reurge the motion for an expert.  The district court dismissed

this argument after concluding that Ford's trial attorneys were

not ineffective for failing to pursue his motion and that the

trial judge did not deny Ford due process by denying his request

for an expert.  The district court reasoned that an attorney's

failure to present a meritless argument cannot give rise to an

ineffective assistance claim because such performance is not

deficient and the result of the proceeding would not have been

different.

To show ineffective assistance of counsel on appeal, the

petitioner

> must first show that his counsel was objectively
> unreasonable in failing . . . to discover nonfrivolous
> issues and to file a merits brief raising them.  If
> [he] succeeds in such a showing, he then has the burden
> of  demonstrating prejudice.  That is, he must show a
> reasonable probability that, but for his counsel's

14

unreasonable failure to file a merits brief, he would have prevailed on his appeal.[28]

The court's discussion of Ford's argument about the performance of his trial attorneys shows the argument had no merit. Ford's appellate counsel was not required to raise an argument without merit. The district court was correct in holding that Ford's appellate counsel was not deficient.

## Conclusion

The adjudication of Ford's claims about ineffective assistance of counsel did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court.[29] The state court's resolution of Ford's arguments does not rely on legal rules that directly conflict with prior holdings of the Supreme Court or reach a different conclusion than the Supreme Court on materially indistinguishable facts.[30] Thus, the district court properly denied Ford's application for federal habeas relief. Consequently, the court AFFIRMS the district court's judgment.

AFFIRMED.

---

[28]*Smith v. Robbins*, 528 U.S. 259, 285 (2000).

[29]28 U.S.C. § 2254(d)(1).

[30]*Busby*, 359 F.3d at 713.

15