**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 29 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| LEE ROBBINS, | No. 07-55458 |
| Petitioner - Appellant, | D.C. No. CV-94-01157-GHK |
| v. | |
| GEORGE SMITH, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted December 7, 2010
Pasadena, California

Before: PREGERSON, CLIFTON, and BEA, Circuit Judges.

Lee Robbins appeals the district court's denial of his petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  We affirm.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

## I.     Right to Counsel

Robbins raises three appointment of counsel claims purportedly implicating his Sixth Amendment rights. Each lacks merit.

First, Robbins is not entitled to substitute his court-appointed counsel with new counsel simply because he disagrees with his counsel or is unsatisfied with his counsel's performance. A criminal defendant has a constitutional right to appointed counsel but not to any particular attorney. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). Upon review of the multiple *Marsden* hearings held by the trial court, we conclude that the court did not abuse its discretion in denying Robbins's request. Nothing in the record indicates that the disagreements between Robbins and his counsel prevented counsel from rendering effective assistance.

Second, after Robbins's voluntary and intelligent waiver of counsel pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975), Robbins did not expressly request reappointment of counsel. Instead, Robbins made requests for advisory counsel and to retain his *pro se* status and to act as co-counsel. Only in a single paragraph in the May 2, 1990 motion did Robbins mention reappointment of counsel, and this request was clearly qualified by his insistence that he remain co-counsel. This was not a request to withdraw his waiver and be represented by

2

counsel in subsequent proceedings, and thus Robbins's waiver carried forward. *See United States v. Springer*, 51 F.3d 861, 864-65 (9th Cir. 1995).

Third, there is no Sixth Amendment right to advisory counsel. *United States v. Moreland*, 622 F.3d 1147, 1155 (9th Cir. 2010).

## II.    *Brady* Material

Robbins did not establish a *Brady* violation because the exculpatory evidence allegedly withheld from Robbins was not material. *See Brady v. Maryland*, 373 U.S. 83 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005) (citations omitted). In Robbins's case, there was no such reasonable probability.

With respect to the victim's rap sheet, any information to be gained would have been cumulative. Merely cumulative evidence does not satisfy the *Brady* materiality prong. *See Barker v. Fleming*, 423 F.3d 1085, 1096-97 (9th Cir. 2005).

With respect to the ballistics report, the record does not establish that such a report existed. Like the district court, we conclude the government did not violate *Brady* by withholding a report that did not exist. We are unpersuaded by

3

counsel's inference that a report did exist.  Such an inference is not supported by the record.

Finally, as to the victim's death certificate, the coroner's investigator's report, the GSR Data Sheet, and the Case Reported sheet, the documents were not material.  Even though the four documents tended to refute the government's theory as to when the shooting occurred, the documents were contradicted by substantial ear and eye witness testimony, which informed the jury that the shooting had occurred sometime prior to 8:30 pm.  Because the overwhelming evidence presented at trial was contrary to the information in the four documents, the government's failure to disclose the documents was not prejudicial and did not violate *Brady*.  *See United States v. Zuno-Arce*, 44 F.3d 1420, 1428 (9th Cir. 1995).

**III.    Appellate Review and Assistance of Appellate Counsel**

Robbins's appellate counsel did not provide ineffective assistance of counsel *per se* by filing a no-merit brief pursuant to California procedure in *People v. Wende*, 25 Cal. 3d 436 (1979).  *Smith v. Robbins*, 528 U.S. 259, 276, 279-84 (2000).  The proper standard under which to evaluate Robbins's *Wende* claims is that enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Smith*, 528 U.S. at 285.  Robbins is required to "show that his counsel was objectively unreasonable in failing to find arguable issues to appeal. . . . If Robbins succeeds in

4

such a showing, he then has the burden of demonstrating prejudice." *Id.* (citation omitted).

Appellate counsel did not render ineffective assistance for failing to raise meritless legal arguments. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982). First, Robbins did not request reappointment of counsel, as discussed above. Second, the trial court properly exercised its discretion in considering and denying Robbins's request for advisory counsel. Contrary to Robbins's belief, *People v. Bigelow*, 37 Cal. 3d 731, 743-44 (1984), does not lay out a strict rubric of factors that a court must consider. Under *Bigelow*, a defendant is entitled "only to a considered exercise of judicial discretion," *id.* at 745, which Robbins received when the trial court considered his request during the August 9, 1990 hearing. Third, the four undisclosed documents were not material under *Brady*.

Moreover, Robbins is not entitled to a presumption of prejudice simply because counsel failed to provide the entire record on appeal as required by *Wende.* This scenario does not fall into those categories requiring a presumption of prejudice under *Strickland. See Smith*, 528 U.S. at 285-87. We also decline Robbins's invitation to extend *Penson v. Ohio*, 488 U.S. 75, 86-88 (1988), and do not find that Robbins was constructively denied counsel such that a presumption of

5

prejudice is warranted.  Robbins has not demonstrated that counsel's failure to provide the entire record on appeal resulted in actual prejudice, as required under *Strickland*.

**AFFIRMED**.

*Robbins v. Smith*, No. 07-55458

**PREGERSON**, Circuit Judge, dissenting:

I agree with the majority that Robbins' three appointment of counsel claims implicating his Sixth Amendment rights lack merit. I disagree, however, with the majority's conclusion that the exculpatory evidence allegedly withheld from Robbins was not material, and I would reverse the district court on this basis. Therefore, I dissent.

Robbins claims that the prosecution violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose (1) the victim's rap sheet, (2) the ballistics report, and (3) documents that suggest that the victim was killed at 10:00 pm, instead of 6:00 to 6:30 pm as the prosecution argued at trial. These documents include the victim's death certificate, the coroner's investigator's report, the GSR Data Sheet, and the Case Reported sheet. Instead of holding an evidentiary hearing to determine whether these documents were in fact turned over to Robbins, the district court dodged the issue by concluding that the evidence contained in these documents was not material. I disagree and would remand to the district court to determine whether the prosecution turned over these documents to Robbins.

Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been

different." *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005) (citations omitted). The proper inquiry is whether the evidence the prosecution failed to disclose undermines the confidence in the verdict. *Id.* If the prosecution did in fact withhold these documents as Robbins asserts, I believe the guilty verdict returned on the murder charge is not worthy of our confidence.

**A. The Victim's Rap Sheet**

In his pre-trial discovery motion, Robbins explicitly requested that the prosecution produce the victim's rap sheet, which would have revealed that the victim was arrested a few months before his death for beating his wife. That rap sheet suggests that the victim was a violent person and that someone else might have had a motive to kill him. Regardless of whether the trial court would have admitted the victim's rap sheet into evidence, its disclosure would have influenced Robbins' defense strategy. *United States v. Bagley*, 473 U.S. 667, 682-83 (1985). Therefore, the victim's rap sheet is material for the purposes of *Brady* because there is a "reasonable probability that the result" of Robbins' trial would have been different had the prosecution disclosed this evidence of Robbins' violent propensities. *Silva*, 416 F.3d at 985.

**B. The Ballistics Report**

The majority affirms the district court's finding that "the government did not

2

violate *Brady* by withholding a [ballistics] report that does not exist." Maj. op. at 3. I disagree. First, it defies common sense that the police did not produce a ballistics report in their investigation of a murder where the murder weapon was a gun, and expended bullets were found at the scene of the crime and some were lodged in the body of the victim. Second, Deputy Van Horn, a firearms examiner in the Los Angeles County Scientific Services Bureau, Firearm Identification Section, testified solely at trial about his conclusions that the bullets found at the crime scene were fired from the same gun owned by Robbins' brother-in-law and recovered from Robbins' brother-in-law's house. A ballistics report must therefore have existed, and such a report is certainly material in a case where the *only* physical evidence possibly linking Robbins to the murder scene was the validity of the match between the gun found at Robbins' brother-in-law's house and the bullets found at the murder scene.

While I recognize that there is a factual dispute whether the prosecution did in fact turn over Deputy Van Horn's report to Robbins, oddly the district court's conclusion here was based on its belief that no ballistics report existed. I would remand to the district court to determine (1) whether Deputy Van Horn's report is a ballistics report, and (2) whether the prosecution in fact provided it to Robbins.

## C. The Coroner's Documents

The victim's death certificate, the coroner's investigator's report, a GSR Data Sheet, and a Case Reported sheet all suggest that the shooting occurred at 10:00 pm and not at 6:30 pm, as the prosecution alleged at trial. The prosecution based its case at least in part on being able to place Robbins near the scene of the crime at around 6:30 pm when it believed the shooting took place.

The majority affirms the district court's conclusion that these documents were not material "[b]ecause the overwhelming evidence presented at trial was contrary to the information in the four documents." Maj. op. at 4. The majority, however, has applied the wrong standard.

As we stated in *Silva*, "[t]he question is not whether the defendant more likely than not would have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 416 F.3d at 985. The prosecution's case here was based on circumstantial evidence placing Robbins at the scene of the crime around 6:00 and 6:30 pm. The only physical evidence possibly linking Robbins to the crime scene was a gun owned by Robbins' brother-in-law and recovered from Robbins' brother-in-law's house. There was no evidence presented at trial directly linking Robbins to this gun. Therefore, these reports from the coroner's office

4

would have created a "reasonable probability that, had the evidence been disclosed to the defense, the result would have been different." *Id.* If these four documents were not disclosed to the defendant, a guilty verdict on the murder charge is certainly not worthy of our confidence.

## D. Conclusion

The majority's conclusion that these documents were not material encourages prosecutors to play fast and loose with exculpatory evidence, believing they can hide behind the shield of immateriality. In this case, the prosecution will never have to respond to the allegation that it withheld critical exculpatory documents. Such a result breeds a disrespect for the law and the constitutional due process guarantees articulated in *Brady.*