[Cite as *State v. Boykin*, 2012-Ohio-1090.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                                                   :
                                          :        Appellate Case No. 24479
        Plaintiff-Appellee                        :
                                          :        Trial Court Case No. 2010-CR-1559
v.                                                             :

                                          :

KEITH BOYKIN                                           :        (Criminal
                                                  Appeal from
                                          :         Common Pleas Court)
        Defendant-Appellant                       :
                                          :
                              . . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of March, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. #0053392, Talbott Tower, Suite 1210, 131 North Ludlow
Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}     Defendant-appellant Keith Boykin appeals from his conviction and sentence

for Felonious Assault. Boykin contends that the trial court erred by denying his request to represent himself at trial. He further contends that the trial court erred in denying his Motion to Vacate Verdict and Order a New Trial, which was based upon an allegation of juror misconduct.

{¶ 2} We conclude that Boykin did not explicitly and unequivocally seek to represent himself at trial and that his motion, made on the day of trial, was untimely. We further conclude that the trial court did not abuse its discretion in denying Boykin's motion for a new trial, because Boykin merely raised a "possibility" that a juror may have known him, his family or the victim. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 3} Boykin was indicted on one count of Felonious Assault with a deadly weapon in violation of R.C. 2903.11(A)(2) and one count of Felonious Assault (Serious Harm) in violation of R.C. 2903.11(A)(1). Counsel was appointed and the matter was set for jury trial to begin October 25, 2010. However, at the final pre-trial conference held on October 19, counsel requested to be removed from the case. The motion was granted, and new counsel was appointed. The trial date was continued to January 19, 2011 with a final pre-trial date of January 11.

{¶ 4} Moments prior to the start of trial, Boykin appeared in chambers with counsel, stated that he no longer wished to be represented by current counsel, and informed the trial court that he would hire new counsel. When his request was denied, Boykin made a statement that he would represent himself. The trial court denied the motion for new counsel and informed Boykin that current counsel would continue to represent him. The matter then proceeded to trial.

{¶ 5} Following trial, Boykin was convicted as charged. Thereafter, Boykin filed a

Motion to Vacate Verdict and Order a New Trial. In that motion Boykin alleged that after the verdict he was "informed by his brother that it is likely that Juror Number 12 has had previous interactions with [Boykin] and more specifically has had direct contact with Mr. Boykin's family and it is likely to assume [sic] had prior contact with the victim in this matter because of the relationship between [Boykin's] family and the victim's family." The motion admitted that Boykin's brother had been present in the courtroom on the first day of trial. Boykin alleged that his brother did not share this information with him until after the verdict. Boykin submitted his own affidavit in support of the motion in which he averred as follows:

1. I was notified by my brother, Eric Boykin and cousin, Reggie McCollough, that they knew Juror Number 12 and that he knew them.

2. They informed me that Juror Number 12 probably knew who I was because they reported that he had been over my [sic] relative's home when I was present in the past.

3. I believe that there is a strong possibility that Juror Number 12 knew me or my family and that he may also have known the victim in this matter, since our families were so close.

4. I believe that Juror Number 12 was not honest in jury selection.

**{¶ 6}** The trial court overruled the motion. At sentencing the trial court merged the two convictions and sentenced Boykin to a prison term of six years. From his conviction and sentence, Boykin appeals.

## II

**{¶ 7}** Boykin's First Assignment of Error is as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT HIS RIGHT TO REPRESENT HIMSELF AT TRIAL.

{¶ 8}	Boykin contends that the trial court should have granted his request to represent himself at trial.   In support, he argues that he "was able to articulate his reasons for his election to self-representation, i.e. that he believed his counsel was going to cause him to be found guilty and sent to prison, that his counsel was not acting in [his] best interest, that he and his counsel did not see eye to eye on things, that his counsel 'scared' him with discussion of what sentence he would receive if he went to trial, [which] shows that his request was not made for purposes of delay or manipulation of the trial process."   Thus, Boykin claims that the trial court's decision is "reversible error *per se*" and not subject to a harmless error analysis.

{¶ 9}	The Ohio Supreme Court has recognized that " 'a defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.' "   *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 32, quoting *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. " 'The constitutional right of self-representation is waived if it is not timely and unequivocally asserted.' " *Cassano* at ¶ 38, quoting *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990).   "If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error."   Citations omitted.   *Id*. at ¶ 32.   "To establish an effective waiver of the right to counsel, 'the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right.' " *Id.*, quoting *Gidion*, 45 Ohio St.2d 366. Paragraph two of the syllabus.   Citations omitted.

{¶ 10}   We have reviewed the record and note that at the start of trial proceedings, Boykin indicated that he no longer wanted his appointed counsel to represent him.   The trial court addressed the matter in chambers, at which point Boykin indicated that he and counsel "don't see eye to eye on anything."   Boykin specifically mentioned that he wanted to take a "lie detector test" and that he wanted to argue self-defense.   Boykin also mentioned that his attorney "scared" him when he started talking about the possible sentence differences between a plea bargain and a jury conviction.   Boykin admitted to the trial court that he had known about these disagreements for "a couple of weeks."   He also stated that he wanted "a real lawyer." At that point, the following colloquy took place:

> THE COURT: From what I have heard you tell me with the jury out there waiting, that is an insufficient reason for you to say - -
>
> THE DEFENDANT: He's going to send me to jail, Judge Hall. I'm –
>
> THE COURT: He's not going to send you to jail.  He's a qualified lawyer just like [your former lawyer] was.
>
> THE DEFENDANT: I can pay for –
>
> THE COURT: I'm not going to allow you at the last minute to try to raise something that could have been raised at the final pretrial.   You didn't mention a word of this.
>
> THE DEFENDANT: He didn't argue until just out there.
>
> THE COURT: You didn't mention a word of this at the final pretrial. We are going to proceed on and he is going to represent you.
>
> THE DEFENDANT: No, my dad is not here.
>
> THE COURT: Yes, sir.

THE DEFENDANT: My father is and them are not here and everybody-

THE COURT: No, sir.

THE DEFENDANT:    – I know, but.

THE COURT: We have a jury waiting here.   What you have indicated to me is –

THE DEFENDANT: I'm going to pay for a lawyer tomorrow, today anyway.   I can pay a retainer and he's not because he is not for my best interest and my life and he is not going to represent me.   I would rather represent myself.

THE COURT: Well, he is going to represent you.

THE DEFENDANT: I can represent myself, Judge.

THE COURT: And you are going to be in the courtroom.

THE DEFENDANT: Not with him.   He's not going to ask questions for me and send me down.

THE COURT: You can provide questions to him.

THE DEFENDANT: No.

THE COURT: We'll give you a piece of paper.

THE DEFENDANT: He's not representing me.

THE COURT: And pencil.

THE DEFENDANT: Not Mr. Rezabek isn't.   That's a fact.

THE COURT: Well, we're going to get you in the Courtroom and we're going to proceed to pick a jury.

THE DEFENDANT: By myself, without him.

THE COURT: No, we're going to do it with him.

THE DEFENDANT: No.

THE COURT: Do you have any legal knowledge? You already indicated to me that you don't. You don't know the rules, right?

THE DEFENDANT: No, I don't.

THE COURT: All right.

THE DEFENDANT: But he is not my lawyer. He's fired. He's not my lawyer.

THE COURT: Well, he's going to represent you.

THE DEFENDANT: No, he's not.

THE COURT: And that's the way it's going to be.

THE DEFENDANT: My father is out here. No, he's not going to represent me. This man is not. I'll pay for legal counsel. He is not.

THE COURT: No, we're going to proceed today. This is the second time.

THE DEFENDANT: I'll proceed. If you make me proceed this [sic], what can I do? I don't know. But I, myself –

THE COURT: You can sit there and you can listen.

THE DEFENDANT: Not with him.

THE COURT: And you can write notes for him –

THE DEFENDANT: No, he's not –

THE COURT: – to ask questions.

THE DEFENDANT: No, he's not my lawyer.

THE COURT: So, I'm going to deny your request for new counsel.

THE DEFENDANT: No, he's not my lawyer. Me and my dad are going to buy a lawyer. He's not my lawyer. If I go in here and ask these questions, myself. He's not my lawyer.

THE COURT: Yeah, he is your lawyer.

THE DEFENDANT: No.

THE COURT: And that's how we're going to proceed.

THE DEFENDANT: No, I don't know what rule that is. He's not my lawyer. No, he's not. Kind of like that prosecution lawyer, he's not my lawyer.

THE COURT: We'll be out there.

THE DEFENDANT: This guy is not my lawyer. I'm serious.

THE COURT: The jury is coming.

THE DEFENDANT: No, none of these people are going to stop me too. He's not my lawyer.

THE COURT: Yeah, I'll let you speak to your father, but you're going to get in the courtroom and Mr. Rezabek is going to be there. And we're going to pick a jury.

THE DEFENDANT: No, he's not my lawyer. I don't know how we're going to do it. He's not my lawyer. I got monies.

THE COURT: Yeah.

THE DEFENDANT: He's not my lawyer. We'll hire a lawyer today or whatever. He is not –

THE COURT: Mr. Boykin, it is too late.

THE DEFENDANT: No, he's –

THE COURT: I'm not going to let you take advantage –

THE DEFENDANT: It's not – he's not my lawyer.

THE COURT: I'm not going to let you take advantage of –

THE DEFENDANT: No, he's not my lawyer.

THE COURT:   – either the court –

THE DEFENDANT: He's not my lawyer.

THE COURT:   – or of the jury.

THE DEFENDANT: I can pay for a lawyer, Mr. Hall.   Mr. Hall, I can pay for a lawyer.

THE COURT: It is too late for that.

THE DEFENDANT: No, it's not.   He is not my lawyer.

THE COURT: We are going to proceed and –

THE DEFENDANT: He can't trick me.   He can't trick me.

THE COURT:   – Mr. Rezabek is going to be your lawyer.

THE DEFENDANT: No, he's not.

THE COURT: And I expect you in the courtroom in ten minutes.

THE DEFENDANT: No, I'm going to call the Supreme Court and over [sic] your head anyway.   He's not my lawyer.

{¶ 11}   After a recess, the jury was brought into the courtroom and the trial started. Boykin contends that he clearly asked to represent himself during trial and that the trial court committed reversible error by denying his request.

{¶ 12}   The exchange above started out as a request for substitute counsel.   When the trial court made it clear that the request for new counsel was untimely and would not be granted, Boykin made several comments that he would "rather" represent himself than proceed to trial with his second lawyer.   It appears to us, from the exchange above, that Boykin did not explicitly and unequivocally make a motion to represent himself.   Rather, it appears that he simply did not want to proceed to trial with his second appointed attorney and wanted a continuance and time to find a third attorney to represent him.   Furthermore, a trial court does not abuse its discretion by denying a motion to proceed to trial pro se when the motion is made as the jury is about to be seated. See,   *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 40, (motion to proceed pro se untimely when filed three days prior to trial).

{¶ 13}   We conclude that the trial court did not err in denying Boykin's request, if he can be deemed to have made one, that he be permitted to represent himself at trial. Accordingly, the First Assignment of Error is overruled.

III

{¶ 14}   Boykin's Second Assignment of Error provides:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S RIGHT TO A FAIR TRIAL; THE TRIAL COURT DENIED THIS RIGHT WHEN IT OVERRULED APPELLANT'S MOTION TO VACATE THE VERDICT AND ORDER A NEW TRIAL.

{¶ 15}   Boykin contends that the trial court should have granted his motion for a new trial.   In support, he argues that the trial court erred by failing to conduct a hearing to determine

whether Juror Number 12 was familiar with him, his family or the victim.

**{¶ 16}** Crim.R. 33(A)(2) provides that "a new trial may be granted on motion of the defendant for * * * misconduct of the jury * * *." We review a trial court's ruling on a motion for a new trial motion for an abuse of discretion. *State v. Taylor,* 2d Dist. Montgomery No. 23916, 2011–Ohio–2563, ¶ 13. The term "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary or unconscionable. *State v. Griffin*, 2d Dist. Montgomery No. 24001, 2012-Ohio-503, ¶ 9. "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." Citation omitted. *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

**{¶ 17}** "* * * [M]isconduct of a juror will not be presumed, but must be affirmatively proved. The law presumes proper conduct on the part of the jury. Clear and positive evidence 'aliunde' is necessary to overcome this presumption." *State v. Sapp,* 10th Dist. Franklin No. 94APA10-1524, 1995 WL 491390, *7 (Aug. 15, 1995), citing *Lund v. Kline*, 33 Ohio St. 317, 320, 13 N.E.2d 575 (1938).

**{¶ 18}** Boykin's motion noted that his brother had been present in the courtroom on the first day of trial, yet his brother failed to notify him of the information concerning the juror until after the verdict was rendered – a delay of at least three days. Had the matter been brought to the trial court's attention during the trial, the parties could have conducted an examination into the matter. In any event, a review of the transcript of voir dire demonstrates

that both the trial court and the prosecutor inquired whether any of the prospective jurors knew either Boykin or the victim. No juror responded affirmatively to either question.

{¶ 19} Moreover, Boykin's affidavit averred that based upon information provided by his brother and cousin following the verdict, Juror Number 12 "probably" knew Boykin and that there was a "strong possibility" that the same juror knew him or his family. He also averred that the juror "may also have known" the victim. As noted by the State, Boykin did not claim to know, or even to recognize, the juror. Furthermore, we agree with the State that the terms "probably," "possibly," and "may," do not rise to the level of affirmative evidence of misconduct.

{¶ 20} The only basis presented in Boykin's affidavit for his conclusion that Juror Number 12 likely knew him was his hearsay statement of what his two relatives had told him: "They informed me that Juror Number 12 probably knew who I was because they reported that he had been over [to] my relative's home when I was present in the past."

{¶ 21} In view of the conjectural nature of Boykin's "evidence" that Juror Number 12 knew him (and had not disclosed that fact when questioned on voir dire), we conclude that the trial court did not abuse its discretion in denying Boykin's motion for new trial. The Second Assignment of Error is overruled.

IV

{¶ 22} Both of Boykin's Assignments of Error being overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Jeffrey T. Gramza
Hon. Dennis J. Adkins